Xerox Corporation v. Local 14A, Rochester Regional Joint at Cone Hall. Mr. Dolce. That is correct. Whenever you're ready. Thank you, your honors, and may it please the court. My name is Michael Dolce and I'm here on behalf of Appellant Local 14A. The issue here is whether there is language in the text of the collective bargaining agreements between the two parties that can reasonably be read as vesting retirement benefits beyond contract expiration. If the answer to that inquiry is yes, the court must go no further and order the dispute arbitrable under the grievance and arbitration procedure of the collective bargaining agreement. The same is true in the post-expiration period under Nolde and Litton. The district court went beyond this inquiry and found that the language in the text of the CBA did not clearly and expressly vest benefits for life. That is not the appropriate standard to reach arbitration. Doesn't that have to be at least considered in the context of an expired CBA? Whether the benefits have been clearly and expressly vested? Yes. I would argue that in the post-expiration period under Nolde and Litton and this court's recent decision in Energy Energy that all you need to be able to present, even in the post-expiration period, is an arguable claim. So yes, you need to point to explicit contract language that can be read as vesting benefits, but the language in the text of the CBA... The district court concluded that it was not arguable. The district court concluded... Well, you're saying if it's arguable, yeah, maybe, but the district court said this is not arguable, that it's clear. That was an error, especially in regards to life insurance benefits. Yeah, so point us to language that is arguable. Great. So first, the life insurance benefits in the text of the CBA are relevant here for a multitude of reasons. First, the district court did not even analyze the life insurance benefits. It limited its analysis to the health insurance benefits. That's a major problem because there is no dispute that the company eliminated all of the retiree benefits and the retiree benefits schedule, including life insurance, and under this court's recent decision in Energy Energy, which found that life insurance benefits are inherently ambiguous because they only go into effect at the end of the retiree's lifetime. Moreover, there aren't any planned documents in the record... But someone can die before the CBA expires. But I would argue they could also die after the CBA expires. No, that's true, but just because there are life insurance benefits does not mean that those benefits have vested, that those benefits will survive past the expiration date. But as long as there is an arguable claim, the dispute should be overheard by the arbitrator pursuant to the expired agreement under... And you're saying it's arguable because they are life insurance benefits. Yes, and because also the parties also knew how to bargain how to eliminate the life insurance benefits for future retirees, right? So there's language in the text of the CBA which says employees hired after a certain date in 2003 aren't eligible for those. That's why you have the old plan, new plan, and all the different categories. Well, the old plan, new plan, and the HRA Flex plan, those are retiree health insurance packages that go to different classes of retirees. But they recognize different classes of retirees, right? Yes, the two parties recognize the different classes. Moreover, there is in the record here the conflicting reservation of rights clauses demonstrate exactly why the dispute must be sent to arbitration. When the tripartite health benefit structure was negotiated during the 1994 negotiations, the reservation of rights clause in the plan document at the time explicitly held that any modification could not affect accrued benefits. That clause can be found in Joint Appendix 513 and 514. Xerox then unilaterally changed that clause at a later point, but there's no dispute that there are relevant retirees- by subsequent reservation of rights alteration in the language. Especially- In subsequent agreements, that's your point. Yeah, exactly. And why it should be sent- It's an acknowledgment that reservation of rights language in 94 is an acknowledgment that the parties at least arguably thought that there was some vesting of interests that were occurring. Property rights were being acquired as a result of that contract. Yes, I would- So the conflict there, right, between the two reservation of rights clauses in the record, it creates a litany of issues, right, all of which must be decided by the arbitrator, such as under the all-day analysis, is the reservation of rights language even incorporated into the text of the CBA? Also, if it is incorporated, which clause governed when? And if it's incorporated, which clause applies to which class of retirees, right? This is all- We don't have all of the relevant plan documents because when we grieved the dispute under the expired CBA, we had an information request, which, again, the company did not respond to because they did not view the dispute as arbitrable. So there's more- There's relevant documents that are not in the record here. Also, in terms of the language in the text of the CBA, there is Justice Ginsburg, in her concurrence, in Tackett, which was then favorably cited by the majority in Reese, explicitly held that implied terms of a collective bargaining agreement in which Justice Ginsburg quoted or cited a surviving spouse clause which says until death could create an ambiguity in the text of the CBA. Here, the district court overextended the holding of Joyce, which held that until death can't be read that way. That's not what Joyce held. Joyce held that a clause that said until death or reaching the age of 65 for Medicare didn't vest the benefits, but the district court in Joyce, which was then affirmed here, explicitly did the Masonite analysis, which found until death can be limiting or rights-granting, and so that can be read as vesting benefits and creates an arguable claim. There's also structural arguments here that Tackett and Reese do not foreclose. The structural arguments are like the Lifecycle Assistance Program, right? That's a $10,000 lifetime account that employees have access to, child care, home buyer benefits, or save for retirement. So as soon as they forego those benefits as an employee, save it for retirement, then retire, the benefits vested, the company can't unilaterally eliminate it. There's also the service component. Up to 30 years of experience, you get more benefits for retirement. So when you make the active decision as an employee to serve one more year to increase your retirement benefit, that decision then vests that retirement. Also, the entire schedule of retiree benefits verifies that the parties always understood that the benefits vested. That is until Xerox attempted to use Tackett and Reese to renege on past promises and escape future liabilities, which this court has seen through in Honeywell and other cases. So also I just want to point to there is ample extrinsic evidence here, which supports that same point. There's lifetime language in Xerox presentations, in letters and official communications on behalf of the company, and then obviously there's dozens of testimonial accounts in the record here, which show that the parties always understood the benefits as lasting for the lifetime of retirees. For that reason, the district court decision must be vacated and remanded on each material point, and the dispute is set to arbitration. Thank you. All right. Thank you. May it please the court, I'm Todd Shinneman, Mixed Impunity Attorneys for Appellee Xerox in this case. I'd like to cut right to the heart of the matter here, which is that in each of the agreements that the union cites, all of them, there is a very specific durational clause, and that durational clause says that the provisions of the agreement continue only until the end of the contract, except as herein otherwise expressly stated. Except as herein otherwise expressly stated. It doesn't say except as subject to a reasonable interpretation. It doesn't say except as subject to some implication or implied, or except as subject to some extrinsic evidence somewhere. It says except as otherwise expressly stated herein. Therefore, the union in this case must come up with clear and express language that vested these rights, and they have not done that. It's very important also to point out that the language that the union relies on, the most important language they rely on or that they emphasize the most, is this language about until death. Well, that language was not in the plan related to the most recent agreement, and that is the only agreement that matters. The union tries to go back. Why is that? If someone retired from Xerox in 1995 or 94 and the plan at that time said that the particular benefits, the life insurance or the health insurance, quote, shall continue until the retiree's death. The word shall continue expresses to me that that will happen until the retiree dies. Doesn't that sound like a property right to you? Well, first of all, under Joyce, the court has held that it does not. In fact, Joyce just focuses on death, but the word shall continue was not in Joyce. I've read Joyce top to bottom, and Joyce is a little hard to appreciate in some ways. It's a little opaque, but in any event, Judge Stantz's opinion in Joyce. But the words shall continue, what does that mean? It seems to me shall continue means it keeps going until death. Well, but death could occur during the term. It doesn't say shall continue until the end of this agreement. It says shall continue. Right, right, but death could occur during the term of the agreement, of course. And that's why you have to go back to the general durational clause. The general durational clause specifically says that unless otherwise expressly stated, all the rights under the contract end when the contract ends. Some of the earlier agreements specifically acknowledged that there was continuity with regard to some of these rights, and the reservation of rights clause kind of accepted that.  They are completely irrelevant. Why is that? Because the union- Geez, you know, if I got a property right from something that was agreed to in 94, and they told me that I could rely on it until I died, I'd find that something that I'd hold close to myself. I mean, I bought my house at a certain particular time, and it continues to be mine, not until the end of a particular period. Someone who works for Xerox spends 30 years working for Xerox, and Xerox says to them, you know what? We're going to pay your health insurance, and it shall continue until you die. Doesn't that sound like a promise that's going to be performed until their death? What's the time limitation other than death, Counselor? The end of the contract. And that's why the durational clause- But the contract doesn't say shall continue until either death or end of the contract. It says death. But it doesn't have to, because all the provisions of the agreement end with the end of the contract, unless otherwise expressly stated. They have to come up with the- So shall continue until death is a false promise. It didn't mean that. If the death occurs after the end of the contract. Well, would there not be some ambiguity there? No, first of all, no, I don't think there's any ambiguity because of the specific language in the durational clause. But let me go back to your question, Judge Wesley. Judge Gracie just seemed to think that because of Joyce that this is all over with, that the reservation of rights just pulled the plug on everything. I don't see it that way. You create a property right. You don't extinguish a property right because you decide you want to walk away from it in a reservation of rights clause. Your Honor, this agreement was negotiated by a very sophisticated union. You're talking about individuals. This case is being brought by the union. The union only has standing in this case because it is a signatory to the agreement. They agreed to something that had a duration clause. That could very well be for the district court to decide if this case were remanded to the district court, if this court were to conclude that perhaps the district court were in error. Well, Your Honor, first of all, I want to go back to a point that you asked about related to the old contracts. And it's a very important one. They are. And the issue is that the union negotiated each of these agreements. And during each of those negotiations and in each of those agreements, they were negotiating on behalf of all existing retirees. It didn't say this applies to people who retired during the term of the agreement. It said what they said was what we are negotiating now applies to all existing retirees. Well, what does that mean? That means that each successive agreement superseded the prior one. And by its very nature, it must because they agreed over the years to various changes. And those changes applied to all existing retirees. And again, the union's only standing in this case is as a signatory to that contract. The employees are suggesting that individual employees might have claims based on some prior contract. Well, they should bring a claim against the union then because the union negotiated it away. The union negotiated every single contract and every single contract applied to all existing employees. Are you saying that if under one of the older contracts, retirees' rights had vested, that the subsequent contracts could have modified those rights? Absolutely, and they did. Every time the parties negotiated an agreement, they were negotiating the rights of all existing retirees. So your theory is, is notwithstanding the fact that a former employee's rights, quote, vested, that they're modifiable by the very nature of the fact that the union enters into CBA subsequently to modify those rights? Absolutely. And this is the union bringing the case. Well, this is the union bringing the claim. It's not the employees. Absolutely, Your Honor. The parties negotiated. It's a permissive subject of bargaining. The union doesn't even by law represent the retirees. But as a permissive subject of bargaining, the parties were entitled to negotiate over the rights of all existing employees. So the union had the, or took the power to negotiate on behalf of all existing retirees. They could have done anything they wanted to them. But I thought your theory, I'm sorry. Go ahead, Judge. I have a procedural question. This has the makings of a summary judgment motion. But, I mean, procedurally, what was the mechanism here? The motion is labeled a motion for, it was a motion to stay arbitration. Right. For a declaratory judgment. A declaratory judgment is usually something you get at the end of the case, whether it's following summary judgment or whether it's following a trial. So I'm a little unclear of what happened here. Well, the way it happened is that the union filed for arbitration. And then we filed a petition to stay that arbitration. And we also requested declaratory judgment related to an issue. Has there been a summary judgment motion for declaratory judgment? It's a final judgment in the case, right? Well, no. It's not. It's only a final judgment in the sense that the court ruled it was not arbitrary. And so, in that sense, I suppose it was final. But it was a declaratory judgment. What's the declaratory judgment? That they're not entitled to arbitrate? Correct. So does the union still have a claim for breach of the collective bargaining agreement? Well, theoretically. But the judge also ruled that it was unambiguous. Okay. So that's the part I'm getting at. The ruling that it's unambiguous, isn't that, in essence, a final judgment on the merits? Well, it's also an interesting question. Because under Lytton, the court in these cases has to get to the merits, right? Because they have to determine whether those rights vested. And if the decision is getting to the merits, was there discovery? I mean, if there is some ambiguity here, is there extrinsic evidence? I just don't procedurally whether it was done correctly. Well, there was certainly no request for discovery from the other side. And you don't need to look at anything else. You need to look at just simply the agreements. The agreements are very clear. Except as otherwise expressly stated herein. Suppose we disagree as to how clear the agreements were. Well, Your Honor, they have to be clear. They have to be. What I'm saying is that you can talk about all of the case law. What does that mean, they have to be clear? Because the contract says they have to be. The contract says except as otherwise expressly stated. Expressly stated herein. Not if it's ambiguous. Not if it could be implied. But expressly stated. So if it's not expressly stated, then the union cannot prevail. And this case cannot go to arbitration. With that, Your Honor, unless you have other questions. Thank you. How do you respond to that point? If it's not crystal clear, then the union loses. Because of that language and the reservation of rights. I'm happy. I have to clarify some points here. And which is relevant for that question, Your Honor. I will absolutely, which I think this answers the question. The union did not bring this LMRA 301 lawsuit. The company brought the LMRA 301 lawsuit to say that this dispute is not arbitrable in the post expiration period. Therefore, it's a fundamentally different question than Tackett, Reese, Honeywell, all these other cases cited in the record. Those were LMRA 301 lawsuits in which the question of vesting was before the court. All that needs to be, all that the union needs to demonstrate here is contract language which is ambiguous. And then the grievance and arbitration procedure applies to that even in the post expiration period. So that the expressly- We do have, I apologize. I don't want to, because your answer is important. But then we're confronted with the other argument they've made. The jury didn't have to reach. And that is that you're not entitled to represent. The retirees don't fall within the ambit of your ability to force an arbitration. Let me, so on the expressly point, the expressly would have to be that the arbitration clause doesn't apply in the post expiration period. Not that the benefits invested, right? Okay. And then, can you repeat your question? Then the question is, where do you get the authority to represent the retirees? By the very nature of the CBA. Exactly. And we would defer to this court's recent decision in Niagara-Mohawk, which gave the standing to the union to enforce those rights that are articulated in the CBA. Also, there's a couple other points I just want to get to real quick. The idea that the union negotiated benefits, there's a small subset of retiree health benefits that were negotiated subsequent, but those weren't material modifications. They were just a further definition of what the benefits were further on. The old plan, the new plan, none of the VRIF, the voluntary reduction of force in 94 and 95, which employees explicitly took to get the health insurance benefits, those have never been changed in the text of the CBA. Again, Niagara-Mohawk contemplates that exact situation where they're just confirming the past. So having the same benefits in the retiree benefit schedule in subsequent CBAs doesn't stand for the proposition that the parties negotiated those benefits each time. It just didn't happen. This is different. They turned it off. They turned off the benefits. They eliminated all retiree benefits with a letter around- So you're saying that if you look at the earlier CBA, they confirmed what your view is. They confirmed the fact that Xerox took the position or understood that those benefits to have vested. Xerox took the position that the, Xerox's position has been that the benefits are tied to the term of the CBA. So therefore, as soon as that ended, that they could eliminate that. Obviously, the union's position is that they did vest at the time of retirement under the prior agreements, according to the terms of the applicable plan. And therefore, the dispute is arbitrable under the expired CBA's grievance and arbitration procedure. If I may, just one last point. In terms of the, if it's ripe for summary judgment, this court has repeatedly held that contract claims are not ripe for declaratory judgment that acts as a summary judgment. And that also, so the union believes that the district court erred, especially when there's other relevant summary plan documents and whatnot that just aren't in the record here. So thank you. Thank you, Your Honor. Any further questions? No. Thank you. Thank you both. We'll take this case under advisement.